IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HARMONI SHAW, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| STANLEY GLANZ, SHERIFF OF | ) Case No. 11-CV-518-GKF-FHM |
| TULSA COUNTY, in his personal and | ) |
| official capacity; and | ) |
| BOARD OF COUNTY COMMISSIONERS | ) |
| OF TULSA COUNTY, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Before the court is defendant Stanley Glanz's ("Glanz") Motion to Dismiss Him in His Individual Capacity [Dkt. #5]. Plaintiff, a detention officer with the Tulsa County Sheriff's Office, filed suit in Tulsa County District Court, asserting claims of race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000c, et seq., and 42 U.S.C. § 1983. [Dkt. #2, Ex. 1, Petition]. Defendants removed the case to federal court pursuant to 28 U.S.C. §§ 1331, 1441 and 1446. [Dkt. #2, Notice of Removal]. Glanz seeks dismissal of the § 1983 claim against him in his individual capacity pursuant to Fed.R.Ci.P. 12(b)(6). [Dkt. #5].

**I. Allegations of the Complaint**

Plaintiff, an African-American female, has been an employee of defendants since April 1, 2008, and is currently employed as a detention officer. [Dkt. #2, Ex. 1, ¶10]. Plaintiff alleges

she was qualified to perform her job and earned a satisfactory work record during her employment as a detention officer with defendants, and has received a bachelor's degree in criminal justice from Benedict College. [*Id.,* ¶¶11-12]. Plaintiff alleges she was treated disparately from her Caucasian coworkers with regard to job assignments, benefits and promotions. [*Id.,* ¶13]. She alleges defendant has routinely given pay increases to Caucasion employees for finishing their college degrees, but has refused to recognize her degree. [*Id.*]. Although plaintiff hand delivered a copy of her transcript to Human Resources, defendant took no further action with regard to a pay increase or allowing her to test for a promotion. [*Id.*]. Plaintiff later applied twice for the position of Corporal with the Tulsa County Sheriff's Department at the David L. Moss facility and was denied both times because defendants arbitrarily refused to recognize her degree as valid. [*Id.*].

Plaintiff alleges she was also treated differently than her Caucasian coworkers with regard to discipline. [*Id.,* ¶14]. Plaintiff contends, "On several occasions Plaintiff suffered unfounded accusations and investigations regarding her professional behavior." [*Id.*]. Plaintiff alleges: "When Plaintiff continued to question why she had not received a raise after submission of her transcript to Human Resources, she was met with an accusation regarding her association with a male in-mate and an immediate investigation conducted by Detective Morrison and Sergeant Kitch from Internal Affairs. No Proof of any misconduct was found, yet Plaintiff was disciplined anyway. Later, Plaintiff was forced to sign a disciplinary statement due to being thirty (30) seconds late, while similarly situated Caucasian employees were not required to do the same." [*Id.*].

Plaintiff alleges she was in a car accident on December 20, 2010, that required her to take a two-week leave of absence from work. [*Id.,* ¶15]. She states, "On or around January 1, 2011,

2

Plaintiff was accused of coming out of a male inmate's cell" and "on or around January 20, 2011, Plaintiff was subjected to an investigation conducted by Deputy McKelvey regarding the accusations on or around January 1, 2011." [*Id.,* ¶16].  Plaintiff alleges that at the time the supposed incident occurred, plaintiff had not returned from her two-week leave of absence. [*Id.*].

Plaintiff also alleges she was treated differently than male coworkers with regard to job assignment. [*Id.,* ¶17]. She states she was not allowed to work in areas of the David L. Moss facility where she might come in contact with male inmates. [*Id.*].

Plaintiff contends she has suffered disparate treatment as a result of a discriminatory process of promotions, raises and discipline because all decisions with respect to promotions, raises and discipline were made by all Caucasian officers, and "[a]s such, defendants' policies and procedures created a disparate impact on Plaintiff as an African American." [*Id.,* ¶18]. She contends she was treated differently and less favorably than Caucasian employees on the basis of her race. [*Id.,* ¶19].

Regarding Glanz, plaintiff alleges:

> 20.  Defendant Glanz is in charge of the jail. Glanz is responsible for implementing the policies and procedures within the jail. Glanz is directly responsible for implementing the promotion policies, including testing policies. Glanz is also directly responsible for the Sheriff's Department's policies with respect to Bachelor's degrees and the pay incentives associated with them.
>
> 21.  The Plaintiff complained directly to Glanz and Undersheriff Edwards about the Defendant's policies and their negative affect upon her as an African American. The Plaintiff received a letter in response from Undersheriff Edwards stating they did find that the Plaintiff's allegations were substantiated, however alleged that the claim of discrimination was no corroborated. [*sic*] The Plaintiff claims that this is a continued effort by Glanz and the Undersheriff to turn a blind eye to instances of disparate treatment despite having direct knowledge of how the policies are being used to discriminate against the Plaintiff and other African Americans with respect to raises, promotions, testing, job assignments, discipline and benefits.
>
> 22.  The Plaintiff believes that Sheriff Glanz and Undersheriff Edwards

> have made a deliberate effort to allow the supervisors of the Sheriff's Department to discriminate against the Plaintiff and other African American employees through unfair application of policies and procedures.

[*Id.*, ¶¶20-22].

Plaintiff's First Claim for Relief alleges disparate treatment based on race in violation of Title VII against the BOCC and Glanz in his official capacity and her Third Claim for Relief alleges disparate impact in violation of Title VII against BOCC and Glanz in his official capacity. Her Second Claim for Relief alleges violation of 42 U.S.C. § 1983 by Glanz in his individual capacity. She alleges "Glanz was aware of widespread complaints of African Americans regarding hostile work environment and differences in treatment on the basis of race, like those of plaintiff," and "Glanz was further aware that his subordinates, supervisors of the Sheriff's department, failed to remedy the discrimination and hostile work environment." [*Id.*, ¶26]. Plaintiff alleges, "As such, defendant Glanz himself, intentionally or with reckless indifference, failed to remedy the hostile work environment and difference in treatment on the basis of race." [*Id.*].

Plaintiff contends Glanz acted under color of state law to deprive her of rights, privileges and immunities guaranteed by the Constitution and the laws of the United States and the State of Oklahoma. [*Id.*, ¶27].

The complaint alleges, "Plaintiff contends that defendant Glanz imposed unlawful hiring, discipline, pay, testing and promotion practices based on race intentionally or through reckless indifference." [*Id.,* ¶28]. Also, "Plaintiff's filing of this lawsuit constitutes speech protected by the First, Thirteenth and Fourteenth Amendments. Defendant's discrimination and harassment of the plaintiff because of this action constitutes a substantial deprivation of the plaintiff's rights, privileges and immunities guaranteed by the First, Thirteenth and Fourteenth Amendments to the

4

Constitution of the United States as enforced by 42 U.S.C. § 1983. [*Id.,* ¶29]. Plaintiff also alleges "the policies and practices of racial discrimination and harassment adopted, ratified, perpetuated or otherwise sanctioned by the defendant Glanz" have deprived her of equal protection of the laws in violation of the Fourteenth Amendment. [*Id.,* ¶30]. Plaintiff alleges Glanz's conduct "has caused the plaintiff to suffer the badges and incidents of slavery in violation of the Thirteenth and Fourteenth Amendments to the Constitution." [*Id.,* ¶31]. Plaintiff contends the conduct of Glanz has deprived her First, Thirteenth and Fourteenth Amendments. [*Id.,* ¶33].

With respect to each of the three claims, plaintiff seeks back pay and lost benefits, front pay until normal retirement; compensatory damages, attorney fees and costs and injunctive relief. [*Id.* at 9,11, 12]. Additionally, with respect to the second claim for relief, plaintiff seeks punitive damages. [*Id.* at 11].

Glanz contends the complaint fails to state a claim for relief against him in his individual capacity.[1]

## II. Applicable Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The United States Supreme Court clarified this standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), ruling that to withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." 550 U.S. 544,

---

[1] Plaintiff's response to the motion to dismiss attached interoffice memoranda dated July 26, 2008, and July 2, 2008, by Captain Michelle Robinette regarding her investigation of allegations of racial discrimination in the Tulsa County Sheriff's Office. [Dkt. ##8-1, 8-2]. Under Rule 12(b)(6), the court has confined its review of the motion to the well-pleaded allegations of the complaint.

5

570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555 (internal quotations omitted).   On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Id.*  Under the *Twombly* standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008), quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).  "The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief."  *Robbins*, 519 F.3d at 1247, citing *Twombly*, 127 S.Ct. at 1965 (internal quotations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Id*.

Although the new *Twombly* standard is "less than pellucid," the Tenth Circuit Court of Appeals has interpreted it as a middle ground between "heightened fact pleading," which is expressly rejected, and complaints that are no more than "labels and conclusions," which courts should not allow.  *Robbins*, 519 F.3d at 1247, citing *Twombly*, 127 S.Ct. at 1964, 1965, 1974.  Accepting the allegations as true, they must establish that the plaintiff plausibly, and not just speculatively, has a claim for relief.  *Robbins*, 519 F.3d at 1247.  "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual

grounds of the claim against them." *Id*. at 1248.  The Tenth Circuit Court of Appeals instructed in *Robbins* that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context. . . .[and] the type of case." *Id*. (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 231-32 (3d Cir. 2008)).  A simple negligence action may require significantly less allegations to state a claim under Rule 8 than a case alleging anti-trust violations (as in *Twombly*) or constitutional violations (as in *Robbins*).  *Id*.

In *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937 (2009), the Supreme Court addressed the pleading requirements for a § 1983 claim.  After the September 11, 2001, terrorist attacks , the FBI and Department of Justice began a massive investigation to identify and assailants and prevent future attacks.  *Id.* at 1943.  It questioned more than 1,000 people with suspected links to the attacks in particular or terrorism in general.  *Id.*  Of those individuals, some 762 were held on immigration charges, and a 184-member subset of the group was deemed to be of "high interest" to the investigation.  *Id.*  The high-interest detainees were held under restrictive conditions designed to prevent them from communicating with the general prison population or the outside world.  *Id.*

Respondent Javaid Iqbal, a Pakistani Muslim, was arrested on charges of fraud in relation to identification documents and conspiracy to defraud the United States.  *Id.* at 1943.  Pending trial for these crimes, he was detained by federal officials a federal detention center in New York.  *Id.*  He was designated a person "of high interest" to the September 11 investigation and in January 2002 was placed in the maximum security unit of the detention center.   Ultimately, he pleaded guilty to criminal charges, served a term of imprisonment and was removed to his native Pakistan.  *Id.* at 1943.  He filed a *Bivens* action against 34 current and former federal

7

officials, including petitioners, former Attorney General John Ashcroft and FBI Director Robert Mueller, and 19 "John Doe" federal corrections officers. *Id.* at 1939, 1943. Iqbal alleged 21 causes of action which were focused not on the arrest or confinement in the detention center's general prison population, but rather on his treatment while confined to the maximum security unit. *Id.* at 1443-44.[2]  Iqbal alleged Aqbal and Mueller designated him a person "of high interest" on account of his race, religion or national origin in violation of the First and Fifth Amendments; that the FBI under Mueller's direction, arrested and detained thousands of Arab Muslim men as part of its September 11th investigation;  that petitioners adopted and approved a policy of holding post-September-11[th] detainees in highly restrictive conditions of confinement until they were "cleared" by the FBI; and that they knew of, condoned and willfully and maliciously agreed to subject Iqbal to harsh conditions of confinement as a matter of policy, solely on account of the prohibited factors and for no legitimate penological interest; and that Ashcroft was the policy's "principal architect" and Mueller was "instrumental" in its adoption and execution. *Id.* The court denied petitioners' motion for qualified immunity and petitioners invoked the collateral-order doctrine to file an interlocutory appeal in the Second Circuit. The appellate court affirmed and petitioners appealed to the Supreme Court. *Id.*

The court rejected Iqbal's argument that under a theory of "supervisory liability," Ashcroft and Mueller could be liable for knowledge and acquiescence in their subordinates' use of discriminatory criteria to make classification decisions among detainees. *Id.* at 1149. The court stated:

> Respondent's conception of "supervisory liability" is inconsistent with his
> accurate stipulation  that petitioners may not be held accountable for the misdeeds

---

[2] Iqbal alleged, inter alia, that jailers kicked him in the stomach, punched him in the face and dragged him across his cell without justification; subjected him to serial strip and body cavity searches and refused to let him and other Muslims pray. *Id.* at 1944.

8

> of their agents. In a § 1983 suit or a *Bivens* action—where masters do not answer for the torts of their servants—the term "supervisory liability" is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct. In the context of determining whether there is a violation of clearly established right to overcome qualified immunity, purpose rather than knowledge is required to impose *Bivens* liability on the subordinate for unconstitutional discrimination; the same holds true for an official charged with violations arising from his or her superintendent responsibilities.

*Id.*

The Supreme Court applied the *Twombly* analysis to determine whether Iqbal had successfully pleaded a claim against Ashcroft and Mueller for supervisory liability under § 1983. It noted that while the court must accept as true all of the allegations contained in a complaint, it need not accept legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. The court found Iqbal's allegations that Ashcroft was the "principal architect" of this invidious policy and Mueller was "instrumental" in adopting and executing it were bare assertions that amounted to nothing more than a "formulaic recitation of the elements" of a constitutional discrimination claim, "namely, that petitioners adopted a policy 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.* at 1951. The court next considered the factual allegations in Iqbal's complaint to determine if they plausibly suggested an entitlement to relief. *Id.* The question framed by the Supreme Court was whether the complaint contained facts "plausibly showing that petitioners purposefully adopted a policy of classifying post-September-11 detainees as 'of high interest' because of their race, religion, or national origin." *Id.* at 1952. The court found it did not. *Id.* Rather, it concluded, "All it plausibly suggests is that the Nation's top law enforcement officers, in the aftermath of a devastating terrorist attack, sought to keep suspected terrorists in the most secure conditions available until the suspects could be cleared of terrorist activity." *Id.*

9

The court noted the government officials could not be held liable "unless they themselves acted on account of a constitutionally protected characteristic," and Iqbal's complaint did not contain any factual allegation "sufficient to plausibly suggest petitioners' discriminatory state of mind." *Id.*

> In the wake of *Iqbal*, the Tenth Circuit, in dicta, commented:
>
> In *Ashcroft v. Iqbal,* the Supreme Court recently held that "purpose rather than knowledge is required to impose *Bivens* liability on … an official charged with violations arising from his or her superintendent responsibilities." This announcement has generated significant debate about the continuing vitality and scope of supervisory liability not only in *Bivens* actions, but also in § 1983 suits like the one before us. At one end of the spectrum, the *Iqbal* dissenters seemed to believe that the majority opinion "eliminates … supervisory liability entirely" …. At the other end of the spectrum, the Ninth Circuit has read *Iqbal* as possibly holding that "purpose … is required" merely in cases of alleged racial discrimination by government officials, given that *Iqbal* itself involved allegations of racial discrimination and such discrimination only violates the Constitution when it is intentional. Many intermediate positions are also surely plausible.

*Lewis v. Tripp,* 604 F.3d 1221, 1227 n. 3 (10th Cir. 2010) (citations omitted).

The Tenth Circuit actually applied the *Iqbal* standards for the first time in *Dodds v. Richardson,* 614 F.3d 1185, 1198-99 (10th Cir. 2010). In *Dodds*, an arrestee filed a § 1983 action against a former county sheriff, in his individual capacity, alleging the sheriff violated his Fourteenth Amendment due process rights by depriving him of his protected liberty interest in posting bail. *Id.* at 1190. The Tenth Circuit, applying *Iqbal,* held that in order to maintain a claim of supervisory liability under 42 U.S.C. § 1983, a plaintiff must allege sufficient facts to show that she may plausibly establish "(1) the defendant promulgated, created, or implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the complained of constitutional deprivation." *Dodds v. Richardson,* 614 F.3d 1185, 1199 (10th Cir. 2010).

10

The court in *Dodd* held that once the plaintiff has shown facts that, if proven at trial, suffice to establish defendant's personal involvement caused the misconduct complained of, plaintiff must still allege facts showing defendant acted with the state of mind required to establish defendant committed a constitutional violation. *Id.* at 1204. "[A]fter *Iqbal,* Plaintiff can no longer succeed on a § 1983 claim against Defendant by showing that as a supervisor he behaved knowingly or with 'deliberate indifference' that a constitutional violation would occur at the hands of his subordinates, unless that is the same state of mind required by a constitutional deprivation he alleges." *Id.* (quotation and citation omitted).

Accepting as true plaintiff's allegations that Glanz was aware of discriminatory practices by his subordinates, plaintiff has arguably met the first requirement for pleading a cognizable § 1983 claim against Glanz for supervisory liability, i.e., that Glanz promulgated, created, or implemented or possessed responsibility for the continued operation of a policy. Further, by alleging she has been treated differently than her Caucasian coworkers with regard to promotions, raises and discipline, and recounting specific instances of such treatment, plaintiff has asserted facts which, if proven, would establish the second element of a § 1983 claim, i.e., that she has suffered constitutional harm.

With respect to the third element—the defendant's state of mind—*Iqbal* instructs that discriminatory intent is required to establish a claim for supervisory liability for racial discrimination. 129 S. Ct. at 1949. Plaintiff has alleged Glanz acted "intentionally or with reckless indifference." "Reckless indifference" clearly does not suffice to establish the required *mens rea* under *Iqbal.* Further, while the complaint makes the conclusory allegation that Glanz acted "intentionally," plaintiff has failed to allege any facts supporting the allegation. The only allegation of *any* personal involvement by Glanz is that she complained to Glanz and

11

Case 4:11-cv-00518-GKF -FHM   Document 13 Filed in USDC ND/OK on 02/08/12   Page 12 of 12

Undersheriff Edwards about the defendant's policies and their negative effect upon her as an African American, and she received a letter in response from Edwards finding the claim of discrimination was not corroborated. [*Id.,* ¶21]. This allegation, taken as true, might establish "knowledge and acquiescence" on the part of Glanz, but does not suffice to establish the "discriminatory intent" state of mind required by *Iqbal. See also Nelson v. Glanz,* 2011 U.S. Dist. LEXIS 92539, at *5 (N.D. Okla. August 17, 2011).[3]  Thus, plaintiff has failed to meet the pleading requirements set out in *Dodds.*

For the foregoing reasons, defendant Glanz's Motion to Dismiss Him in His Individual Capacity [Dkt. #5] is granted.

Entered this 8th day of February, 2012.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma

---

[3] In *Nelson,* Chief Judge Claire Eagan considered similar allegations of racial discrimination asserted by another African American employee of the Tulsa County Sheriff's Office. Plaintiff in that case also attached a copy of Captain Robinette's investigative report to her response to Glanz's motion to dismiss. Nevertheless, Judge Eagan concluded plaintiff's complaint failed to allege facts showing anything more than "knowledge and acquiescence" by the defendant.

12